# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| SHARON LEE TENNYSON, | |
| Plaintiff, | No. C 13-4035-MWB |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ORDER REGARDING REPORT AND RECOMMENDATION |
| Defendant. | |

This case is before me on a Report and Recommendation (R&R) from Judge Leonard Strand, filed on February 10, 2014 (docket no. 21). In the R&R, Judge Strand recommends that I affirm a decision by the Commissioner of Social Security (the Commissioner) denying Plaintiff Sharon Tennyson (Tennyson) supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. Tennyson has timely filed objections to the R&R (docket no. 22). For the reasons discussed below, I adopt the recommendations in the R&R and affirm the Commissioner's decision.

I review *de novo* the portions of the R&R to which Tennyson objects. 28 U.S.C. § 636(b)(1). Tennyson makes four objections to the R&R, arguing:

1. Substantial evidence does not support the Commissioner's decision to deny Tennyson benefits;

2. The ALJ wrongly discounted the opinion of Dr. Toddy, Tennyson's treating psychologist;

3. The Appeals Council and the ALJ wrongly failed to consider the opinion of Collette McCullough, Tennyson's treating counselor, and a report from Rene Eastham, a counselor with Iowa Vocational Rehabilitation Services; and

4. The ALJ wrongly discounted Tennyson's subjective testimony.

Based on these objections, Tennyson argues that I should reverse the Commissioner's decision and directly award Tennyson benefits or, alternatively, that I should remand this case for further proceedings.

None of Tennyson's objections, however, warrants reversing the Commissioner's decision. First, Tennyson claims that the Commissioner's decision was not supported by substantial evidence in a single, conclusory sentence without reference to any record evidence. I therefore assume that Tennyson's substantial-evidence objection rests on the substance of her other three objections, which is how Tennyson framed her argument before Judge Strand (docket no. 21, at 14).

Second, the ALJ did not wrongly discount Dr. Toddy's opinion. A treating physician's opinion "does not automatically control, particularly if the treating physician evidence is itself inconsistent." *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007) (citation and internal quotation marks omitted). The ALJ discounted Dr. Toddy's opinion because it was "internally inconsistent," AR 22, and Judge Strand thoroughly summarized the internal inconsistencies in the R&R (docket no. 21, at 16-19). Tennyson's objections address only one of the many inconsistencies: that Dr. Toddy's latest opinion stated that Tennyson's GAF score was 41 to 50, whereas his earlier reports placed it between 56 and 65 multiple times. Tennyson downplays the inconsistency, suggesting that the lower scores are more accurate because they were based on a "full-scale evaluation," whereas the other scores were based on shorter evaluations. But Tennyson cites no authority stating that an ALJ can only consider GAF scores resulting from a full-scale evaluation. And, in any event, Dr. Toddy's

2

inconsistent GAF scores were but one of many inconsistencies; the other inconsistencies that the ALJ and Judge Strand discussed, which Tennyson does not address, independently provide substantial evidence supporting the ALJ's decision to discount Dr. Toddy's opinion.

Tennyson also claims that "Dr. Toddy's notes contain many reports of the symptoms that supported his conclusions" (docket no. 22, at 11). Even if that were true, it would be unavailing here. The question here is not whether the ALJ could have reached a different conclusion; the question is whether substantial evidence supports the ALJ's conclusion. *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996). The record may well provide substantial evidence supporting two, conflicting conclusions. *Id*. at 416-17. It is the ALJ's prerogative—not mine—to weigh the evidence and choose among those conclusions. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). Because the ALJ had good reason to discount Dr. Toddy's opinion, I affirm that decision, even if the ALJ could have decided otherwise. Tennyson lastly notes that Dr. Toddy's report is not a "checklist." While Judge Strand described Dr. Toddy's mental RFC questionnaire as a "checklist form," neither he nor the ALJ discounted Dr. Toddy's opinion simply because it was based on a "checklist" report. Tennyson's argument is therefore inapposite.

Third, the ALJ did not err in failing to consider Collette McCullough's opinion or Rene Eastham's report, which was submitted after Tennyson's hearing. Tennyson concedes that McCullough, a nurse practitioner, and Eastham, a rehabilitation counselor, are not "acceptable medical sources" and, thus, that their opinions are not entitled to the deference given to treating physicians' opinions. *Lacroix v. Barnhart*, 465 F.3d 881, 885-86 (8th Cir. 2006). Still, contrary to Tennyson's claim, the ALJ *did* consider McCullough's opinion in evaluating Tennyson's RFC. As Judge Strand noted, "the ALJ's RFC includes limitations that are consistent with McCullough's concerns

3

and treatment notes" (docket no. 21, at 23). But Judge Strand also noted that McCullough's opinion does not undermine the ALJ's decision because (1) McCullough's opinion was "not supported by an explanation or her treatment notes" and (2) McCullough noted that Tennyson's symptoms could be accommodated (docket no. 21, at 22). Again, Tennyson does not address these findings in the R&R. As for Eastham's post-hearing letter, nothing in the letter is so powerful as to compel the conclusion that the ALJ's findings are no longer supported by substantial evidence.

Finally, the ALJ did not err in discounting Tennyson's credibility. To paraphrase, the ALJ discounted Tennyson's subjective complaints for a number of reasons, which were fully summarized in the R&R:

- Tennyson stopped taking her medications and made no effort to find work after she was denied disability benefits in May of 2009. Tennyson only resumed her medications and jobs search when she re-applied for benefits.
- Tennyson's daily activities, and multiple trips to and from Wyoming, belied her claims that she was unable to work around others. Tennyson cared for her daughter, used the bus, took care of her personal hygiene, did household chores, read and used the computer during the day, and took at least two extended trips to Wyoming lasting 3 to 4 weeks.
- Tennyson's medical records did not support her allegations. The ALJ noted that Tennyson's symptoms were managed while she was medicated. McCullough documented that Tennyson's attention and focus were "adequate"/"good"/"improving" during all but two visits, and noted numerous times that Tennyson had a stable mood and goal-directed thought processes. Dr. Toddy placed Tennyson's GAF score between 56 and 58 during August and September of 2010, and documented that Tennyson's symptoms were generally related to family matters.

4

- Tennyson's vocational rehabilitation records did not support her allegations. Tennyson limited the number of hours she was willing to work and quit volunteer jobs when she learned she was ineligible for pay.[1]

In light of these reasons, Tennyson argues that the ALJ failed to consider the nature of her impairments. Tennyson notes that, because her bipolar disorder is "episodic," her disorder can prevent her from working even though, at times, she may appear "normal." She also cites to case law noting that people with mental health disorders often fail to comply with their treatment, and suggests that the ALJ wrongly "used Tennyson's failure to stay on her medication against her" (docket no. 22, at 16-17). These arguments do not compel reversing the ALJ's decision. As I noted above, and as Judge Strand discussed in the R&R, the ALJ's decision here was based on substantial evidence in the record as a whole, and the majority of Tennyson's treatment records indicate that she was doing relatively well, or at least improving, and that Tennyson's symptoms were managed via medication. Tennyson cites no authority suggesting that bipolar disorder's episodic nature is alone enough to reverse an ALJ's denial of benefits. If that were the case, an ALJ could never deny benefits to a bipolar claimant—a result the law does not support. Moreover, the record indicates that Tennyson went off her medication for financial reasons, AR 19, not because her disorder prevented her from complying with treatment. And Tennyson's own testimony demonstrates that she understands her medications' functions and that those medications help manage (but do not obviate) her mental health issues. AR 63-65.

---

[1] In her objections, Tennyson argues that the record does not support this finding. But vocational counseling records confirm that Tennyson complained upon learning that she would not be paid for her volunteer work, AR 250-253, and, during her testimony, Tennyson herself admits to quitting her volunteer work, AR 54-55.

5

Tennyson also notes that, while she was able to travel to Wyoming, one of the trips was a "very bad trip." But, according to her testimony, it was bad due to a familial conflict, not because of her impairments. AR 61.

Based on the record evidence as a whole, and Judge Strand's thorough R&R, I find that Tennyson's objections do not warrant reversing the ALJ's decision.

**THEREFORE,**

For the reasons discussed above, I adopt the recommendations in the R&R and affirm the Commissioner's decision. The Clerk shall enter judgment in favor of the Commissioner and against Tennyson.

**IT IS SO ORDERED**.

**DATED** this 19th day of June, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA